# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KARL ERIC GRATZER,
         *Petitioner-Appellant,*

v.

MIKE MAHONEY, WARDEN,*
         *Respondent-Appellee.*

No. 03-35613

D.C. No.
CV-87-04-H-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
December 7, 2004—Seattle, Washington

Filed January 31, 2005

Before: Jerome Farris, Michael Daly Hawkins, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Farris

---

*The parties have agreed to substitute Mike Mahoney for Henry Risley
as Respondent-Appellee, pursuant to Fed. R. App. P. 43(c)(2).

1251

## COUNSEL

Michael Donahoe, Assistant Federal Defender, Helena, Montana, for the petitioner-appellant.

Carol E. Schmidt, Assistant Attorney General, Helena, Montana, for the respondent-appellee.

---

## OPINION

FARRIS, Circuit Judge:

Karl Eric Gratzer appeals the district court's denial of his petition for habeas corpus, claiming that a jury instruction in his 1982 trial in Montana for deliberate homicide violated his constitutional right to due process. We affirm.

### *BACKGROUND*

The facts underlying Gratzer's conviction for deliberate homicide are recounted at *State v. Gratzer*, 682 P.2d 141 (Mont. 1984); a summary suffices for our purposes. In December of 1981, the relationship between Gratzer and his then-girlfriend was deteriorating and Gratzer began to suspect that his girlfriend was interested in another man, Timothy Hull. On the evening of April 14, 1982, Gratzer discovered his girlfriend's car near a dormitory of the Montana College of Mineral Science and Technology; his girlfriend did not live in the dormitory. Gratzer was observed letting the air out of two tires of the car and was chased away by the observers.

Gratzer returned to the parking lot armed with a .357 magnum pistol. He saw his girlfriend exit the dormitory, discover the flat tires, and reenter the dormitory. She came out of the dormitory hand-in-hand with Hull. As they approached the car, Gratzer confronted them with gun in hand. Gratzer and Hull struggled and Hull broke free and attempted to flee. As Hull retreated, Gratzer shot him in the back of the left leg, incapacitating him. Gratzer walked to the place where Hull lay and shot him twice, at point blank range, in the left side of the head. Hull died instantaneously. Gratzer left the scene and subsequently turned himself in to the police.

On April 20, 1982, Gratzer was charged with Deliberate Homicide and Aggravated Assault. At his trial, Gratzer presented expert testimony that he was acting under severe emotional stress at the time of the murder. As a result of this testimony, the judge gave the jury the following instruction, No. 10A, as to the offense of Mitigated Deliberate Homicide, a lesser included offense of Deliberate Homicide:

> In order to find the Defendant Guilty of the lesser offense of mitigated deliberate homicide, the State must prove the following propositions:
>
> *First,* that the Defendant performed the acts causing the death of Tim Hull, and

*Second,* that when the Defendant did so, he acted purposely or knowingly.

> Additionally, you must find that at the time the Defendant killed [Hull], he was acting under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the Defendant's situation.
>
> If you find from your consideration of all the evidence that each of the first two propositions has been proved beyond a reasonable doubt by the State and that the Defendant, at the time he killed [Hull], was acting under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse, then you should find the Defendant Guilty of the lesser offense of Mitigated Deliberate Homicide.
>
> However, if you find that the Defendant was not acting under the influence of extreme mental or emo-

tional stress for which there is a reasonable explanation or excuse, then you should find the Defendant Guilty of Deliberate Homicide.

If you find from your consideration of all the evidence that either of the first two propositions has not been proven by the State beyond a reasonable doubt, then you must find the Defendant Not Guilty of Deliberate Homicide.

The jury convicted Gratzer of Deliberate Homicide and acquitted him of Aggravated Assault. Gratzer was sentenced to life imprisonment plus ten years for the use of a firearm in the commission of the offense. Gratzer appealed to the Montana Supreme Court, challenging Jury Instruction No. 10A, and the Montana Supreme Court affirmed his conviction. *Gratzer*, 682 P.2d at 148.

On January 13, 1987, Gratzer filed a petition for habeas corpus in the federal district court of Montana, again challenging Instruction No. 10A. On October 10, 1990, the district court adopted the magistrate judge's recommendation that the State's motion for summary judgment be granted. Gratzer filed a notice of appeal and a request for a certificate of probable cause in the district court on October 16, 1990, which the court denied on November 9, 1990. On November 19, 1990, Gratzer filed a request for issuance of a certificate of probable cause with this Court. He contacted this Court on January 27, 1992, seeking the docket sheet reflecting his appeal, but the Court informed Gratzer that his submissions did not appear to meet the filing requirements.[1]

Gratzer did nothing for more than eleven years. On June 30, 2003, he requested a certificate of appealability from this Court, which was granted on the issues of whether the amend-

---

[1]There is nothing in the record that clarifies the problem with Gratzer's submission to this Court in 1990.

ments to the Antiterrorism and Effective Death Penalty Act apply to his case and whether his constitutional rights were violated by Instruction No. 10A.

## *DISCUSSION*

Before addressing the merits of Gratzer's petition, we resolve two preliminary matters: the rules and standards governing our review of Gratzer's petition; and whether the equitable doctrine of laches bars the petition.

### *Standard of Review Applicable to the Petition*

**[1]** The determination of whether AEDPA applies to a habeas petition is reviewed de novo. *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1163 (9th Cir. 2000). Gratzer's original petition for habeas corpus was filed in 1987, and the AEDPA amendments' effective date is April 24, 1996. Pre-AEDPA law applies to the merits of Gratzer's petition. *See Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001).

The Supreme Court has held that AEDPA's provisions regarding the issuance of a COA as a predicate to review in the court of appeals apply to all cases in which the notice of appeal was filed after AEDPA's effective date. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). Gratzer's notice of appeal was filed on October 16, 1990, well before the AEDPA amendments took effect; therefore pre-AEDPA practice applies, and the granting of a COA by this Court was, as a technical matter, improper. However, the amendment to 28 U.S.C. § 2253 merely codified the pre-AEDPA standard for obtaining a certificate of probable cause set forth in *Barefoot v. Estelle*, 463 U.S. 880, 893-94 (1983). *Tillman v. Cook*, 215 F.3d 1116, 1120 (10th Cir. 2000). The technical error of issuing a COA, as opposed to a CPC, is therefore immaterial.

### *Laches*

**[2]** In pre-AEDPA practice, the equitable doctrine of laches as applicable to habeas petitions was codified in Rule 9(a) of

the Rules Governing Section 2254 Cases. *Harris v. Pulley*, 885 F.2d 1354, 1365-66 (9th Cir. 1988). Rule 9(a) provided:

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

The State argues that it has been prejudiced by Gratzer's eleven-year delay in bringing this appeal because it is virtually impossible to re-prosecute him now for a crime that occurred over twenty years ago. The record reflects a basis for this argument. Nevertheless, the relevant standard is whether the State has been prejudiced in its ability to respond to the issues raised by the petition, *Aiken v. Spalding*, 684 F.2d 632, 634 (9th Cir. 1982), not in its ability to retry the defendant. *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986). Under pre-AEDPA standards, neither the petitioner's substantial and unwarranted delay in filing the petition nor the difficulty of re-prosecution is dispositive — only the prejudice to the state in responding to the issues in the petition is material. *Aiken*, 684 F.2d at 634.

**[3]** The question is whether Instruction No. 10A violated Gratzer's constitutional rights. The State has not demonstrated that Gratzer's delay in raising this question has prejudiced its ability to respond adequately; the petition will not be dismissed on the basis of laches.

### *The Merits*

Under pre-AEDPA law, we review questions of law raised in habeas cases de novo. *Williams v. Taylor*, 529 U.S. 362, 400 (2000) (O'Connor, J., concurring in part). Petitioner's

sole constitutional contention is that his due process rights were violated because Jury Instruction No. 10A either (1) improperly imposed the burden of proving mitigation on him, or (2) did not assign the burden of proving extreme mental or emotional stress to either party.[2]

**[4]** The State charged Gratzer with Deliberate Homicide. To convict for Deliberate Homicide in 1982, the State was required to prove beyond a reasonable doubt that one purposely or knowingly caused the death of another human being. Mont. Code Ann. § 45-5-102 (1981). Under Montana law at the time, "knowledge or purpose may be inferred from the fact that the accused committed a homicide and no circumstances of mitigation, excuse or justification appears." Mont. Code Ann. § 46-16-203(2) (1982).[3]

The State did not charge Mitigated Deliberate Homicide. In 1982, Montana's Mitigated Deliberate Homicide statute stated in relevant part:

> Criminal homicide constitutes mitigated deliberate homicide when a homicide which would otherwise be deliberate homicide is committed under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse . . . .

Mont. Code Ann. § 45-5-103(1) (1982).

In Gratzer's appeal, the Montana Supreme Court stated that neither party has the burden of proof as to mitigating circumstances, but either party may present evidence of mitigation. *Gratzer*, 682 P.2d at 146. That statement of law has subse-

---

[2]At no point in his briefing does Gratzer claim that the failure of Jury Instruction No. 10A to instruct the jury as to the quantum of proof necessary to establish extreme mental or emotional stress violated his constitutional rights. At oral argument, counsel for Gratzer explicitly disavowed such a claim.

[3]This statement was not included in Instruction No. 10A.

quently been codified at Mont. Code Ann. § 45-5-103(3) (2003).[4]

[5] Gratzer argues first that Instruction No. 10A imposed the burden of proving mitigation on him, thereby improperly relieving the prosecution of its burden to prove the absence of mitigating circumstances. This contention must be rejected. The State charged Gratzer with Deliberate Homicide. The existence of extreme mental or emotional stress is not an element of that offense. It is nonsensical to argue that the State should have been required to prove anything other than the elements of Deliberate Homicide in order to obtain a conviction for that crime. The elements in the Montana statute distinguish this case from *United States v. Marolda*, 615 F.2d 867 (9th Cir. 1980), upon which Gratzer purports to rely. There, the government charged Marolda with embezzling from a labor union and the jury convicted him of that offense. *Id.* at 868. One of the facts underlying the charge was Marolda's alleged improper use of a credit card for unauthorized charges. *Id.* We held that it was error for the district court to instruct the jury that it need not decide whether Marolda's use of the credit card was properly authorized. *Id.* at 870-71. By contrast, the State did not charge that Gratzer acted in the absence of extreme mental or emotional stress; it charged only that Gratzer committed Deliberate Homicide, whose ele-

---

[4]States are not required to provide affirmative defenses or mitigating circumstances, and may define which party bears the burden of proof for such defenses and circumstances. *See Patterson v. New York*, 432 U.S. 197, 209 (1977) ("If the State . . . chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonably [sic] certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, . . . ." ); *Martin v. Ohio*, 480 U.S. 228, 232 (1987) ("[In *Patterson*, we] emphasized the preeminent role of the States in preventing and dealing with crime and the reluctance of the Court to disturb a State's decision with respect to the definition of criminal conduct and the procedures by which the criminal laws are to be enforced in the courts, including the burden of producing evidence and allocating the burden of persuasion.").

ments (and the facts undergirding them) do not include proof that the defendant acted in the absence of mitigating circumstances.

**[6]** Rather, Gratzer's claims are akin to those discussed by the United States Supreme Court in *Patterson v. New York*, 432 U.S. 197 (1977). In *Patterson*, the Court upheld the constitutionality of a statute that required the defendant to prove the affirmative defense of "extreme emotional disturbance" by a preponderance of the evidence once the prosecution had proved the elements of second degree murder beyond a reasonable doubt. *Id.* at 206. So here, where Instruction No. 10A stated that the prosecution was required to prove the two elements of Deliberate Homicide beyond a reasonable doubt; at that point, imposing the burden on Gratzer to prove mitigation (assuming this is, in fact, what the instruction did) was not unconstitutional.

**[7]** Gratzer next complains that the trial court's failure to assign the burden of proving mitigation to either party violated his right to due process and may have compromised the jury's unanimity task. It is true that Instruction No. 10A does not allocate the burden of proving mitigation to either party; this ambiguity left the jury in the admittedly unusual position of speculating about who bore the burden. However, if it was not constitutional error for the jury to place the burden of proving mitigation on Gratzer (and Gratzer does not argue that it would have been error for the jury to place the burden of proving the absence of mitigation on the prosecution) then Instruction No. 10A cannot violate the Constitution by failing to assign the burden of proving mitigation.[5] Gratzer fails to make out a constitutionally colorable claim.

---

[5]*See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (providing that the test for an ambiguous jury instruction is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution" (citing *Boyde v. California*, 494 U.S. 370, 380 (1990))

**AFFIRMED.**